**Howard MYERS, Plaintiff,**

v.

**COLUMBUS SALES PAVILION, INC., a Nebraska corporation, Defendant.**

**No. CV82-L-95.**

United States District Court,
D. Nebraska.

March 7, 1983.

Gerald L. Friedrichsen, Omaha, Neb., for plaintiff.

Robert D. Mullin, Jr., Omaha, Neb., for defendant.

## MEMORANDUM

URBOM, Chief Judge.

The plaintiff by filing 11 and the defendant by filing 8 have moved for summary judgment, pursuant to Rule 56 of the Federal Rules of Civil Procedure.

A motion for summary judgment may properly be granted if there remains no genuine issue of material fact and the movant is entitled to judgment as a matter of law. Rule 56(c) of the Federal Rules of Civil Procedure. The material facts in this case are not in dispute and have largely been stipulated to by the parties. The plaintiff is a citizen of Iowa who is self-employed as an order buyer of livestock. The defendant is a Nebraska corporation with its primary place of business in Columbus, Nebraska, where it operates a cattle auction.

In early March of 1979 the plaintiff sold 145 head of cattle to Joe Blocher, who was doing business under the name of H & O Farms, for $70,117.08. H & O Farms had numerous cattle—including those sold to it by the plaintiff—transported about March 1, 1979, to Columbus Sales Pavilion for sale at auction. The 145 head of cattle were checked into Columbus Sales under the name of H & O Farms. All of the H & O Farms cattle were sold at auction and the proceeds of the sale were remitted to H & O Farms by Columbus Sales Pavilion. There are no allegations that Columbus Sales Pavilion had actual knowledge of any claim of the plaintiff to the 145 cattle that were sold at the auction. The deposition of the plaintiff indicates that there was no agreement between him and H & O Farms as to when title to the cattle passed.

H & O Farms issued a check to the plaintiff on March 10, 1979, for $138,091.48 in payment for the 145 head of cattle and other cattle purchased by the plaintiff for H & O Farms. The check was returned as dishonored on April 10, 1979, because the H & O account was closed. The plaintiff had no notice of the dishonor until after the cattle were sold at auction. This lawsuit

ensued, whereby the plaintiff claims that the defendant was the agent of H & O Farms and by remitting the proceeds of the sale to H & O it aided and abetted H & O and Joe Blocher in converting the plaintiff's property. The plaintiff reaches his conclusion by applying the law of Iowa to the transaction.

■ A federal district court sitting in diversity jurisdiction, as in this case, must apply the law of the forum in which it is situated. The law of the forum includes the choice-of-law rules as well as the substantive law. *Klaxon Co. v. Stentor Electric Manufacturing Co.*, 313 U.S. 487, 496, 61 S.Ct. 1020, 1021, 85 L.Ed. 1477 (1941). In this case, there must be a determination with respect to the choice of law that will define the bounds of a conversion action; such a determination is multi-faceted and requires attention to the various elements of the plaintiff's claim. The plaintiff bases his theory on an agency-principal relationship between H & O Farms and the defendant to give rise to liability for conversion. To sustain the action for conversion the plaintiff must in addition show that the defendant, as agent for H & O Farms, did not have title to the cattle at the time of the sale. Both of those areas require a determination concerning the applicable rule of law.

The Supreme Court of Nebraska appears not to have ruled recently on the applicable choice-of-law rule for actions for conversion of personalty. In two areas involved in the determination of this case, the law of contracts and the law of torts, the clear trend of the court has been to adopt the *Restatement (Second) of Conflict of Laws* approach to the choice of law problem. See *Shull v. Dain, Kalman & Quail, Inc.*, 201 Neb. 260, 267 N.W.2d 517 (1978) (contracts); *Crossley v. Pacific Employers Insurance Co.*, 198 Neb. 26, 251 N.W.2d 383 (1977) (torts). Thus, although there is no direct authority on the exact subject matter of this case, there is sufficient authority for me to conclude that the Supreme Court of Nebraska probably would apply the *Restatement (Second)* analysis in this situation.

■ Under *Restatement (Second)* § 147, the local law of the state where the injury occurred is applied in cases of injury to tangible things, including personalty, unless another state has the most significant relationship to the occurrence, the thing, and the parties. The comments make it clear that in cases involving conversion, each subissue in a conversion action is to be dealt with separately by applying the choice of law for that particular area. See § 146, Comment i. Therefore, the determination of at least the property interests—title to the cattle, in this case—must be made separately under the applicable choice-of-law rules for that area. The law defining the requisite acts to constitute a conversion is determined under the § 147 analysis.

The validity and effect of a conveyance so as to vest title in a particular person or entity is determined by the state having the most significant relationship to the parties, the chattel, and the conveyance. *Restatement (Second) of Conflict of Laws* § 244. In the case here it is not necessary to make such a determination, because the law of Nebraska and Iowa is identical with respect to the passage of title to the cattle; both states have adopted the Uniform Commercial Code containing the identical relevant provisions.

■ UCC § 2–401(2) provides, in the absence of an agreement by the parties to the contrary, that title passes to the buyer "at the time and place at which the seller completes his performance with reference to the physical delivery of the goods, despite any reservation of a security interest." See Iowa Code § 554.2401 (1983); Neb.Rev. Stat. UCC § 2–401 (Reissue 1980). UCC § 2–401(1) further provides that "[a]ny retention or reservation by the seller of that title in goods shipped or delivered to the buyer is limited in effect to a reservation of a security interest." See Iowa Code § 554.2401(2) (1983); Neb.Rev.Stat. UCC § 2–401(2) (Reissue 1980). Thus, with respect to the transaction here, title to the 145 head of cattle passed to H & O Farms

at the time the plaintiff delivered them. Any interest the plaintiff retained could amount to no more than a security interest, provided there was no agreement by the parties, either expressly or in course of conduct, that altered the result. The facts as stipulated and in the plaintiff's deposition leave no hint that there was any agreement or course of dealing requiring a contrary result.

The plaintiff argues that UCC §§ 2-507(2) and 2-511 make H & O Farms' interest in the cattle conditional upon the payment of the purchase price. UCC § 2-507(2), Iowa Code § 554.2507(2) (1983) and Neb.Rev.Stat. UCC § 2-507(2) (Reissue 1980), provides that the right of a buyer "against the seller to retain or dispose of [the goods] is conditional upon his making the payment due." UCC § 2-511(3), Iowa Code § 554.2511(3) (1983) and Neb.Rev. Stat. UCC § 2-511(3) (Reissue 1980), provides that "payment by check is conditional and is defeated as between the parties by dishonor of the check on due presentment." The plaintiff's interpretation of the cited sections is that they operate to revest the seller with title upon failure of conditional payment by a check. I do not agree.

First, § 2-507(2) speaks to the buyer's rights to retain or dispose of the goods, not the title held by him. It thus appears that the concepts of title and the right to retain goods are separate. This is consistent with other provisions of the UCC that separate the determination of title from other situations, contrary to the results under the common law. Compare UCC § 2-401 with § 2-509 (title versus risk of loss); UCC § 2-401 with § 2-501 (title versus insurable interest). I conclude, therefore, that title passed to H & O Farms upon delivery of the cattle. It should also be noted that the opening language of § 2-401 provides that "[e]ach provision of this article with regard to the rights, obligations and remedies of the seller, the buyer, purchasers or other third parties applies irrespective of title to the goods except where the provision refers to such title." Section 2-507 refers to payment and § 2-511 refers to conditional payment, but neither refers to title.

Second, the wrongful retention or disposition of the cattle through failure of payment by H & O constituted a breach of contract and thereby brings the panoply of remedies provided by § 2-703 into play. Section 2-703 provides remedies when, inter alia, the buyer "fails to make a payment due." The UCC appears to classify failure of conditional payment as a breach of a payment term, not a tortious conversion of the property.

Third, UCC § 2-401(4) specifically mentions situations where title revests in the seller. Those situations do not include the failure of conditional payment. Given the prefatory language contained in § 2-401 requiring specific reference to title before a section affects it, the absence of failure of conditional payment in § 2-401(4) is of importance to an interpretation that title does not revest for failure of payment.

Thus, given either the law of Iowa or the law of Nebraska, it appears that the plaintiff relinquished title to H & O Farms upon delivery and that title did not revest in him at any time subsequent to delivery. In addition, any interest that he may have retained was only a security interest.

The second issue to be resolved is whether the law of Iowa or Nebraska should apply with respect to defining the aspects of an agency relationship between H & O Farms and the defendant that could give rise to the defendant's liability. Under the above analysis of the trend in Nebraska cases, I believe that *Restatement (Second)* principles should be applied to make this determination. It is unnecessary under *Restatement (Second)* to make a determination of which state's law applies with respect to the creation of the agency. Where, as in this case, the liability rests on rights and duties between the agent and third parties, the choice-of-law determination "is the same as that which would be applied if no agency were involved and is selected by ordinary choice-of-law rules." *Id.*, § 291, Comment a. The result here is to make the choice-of-law determination

bearing on the liability of the defendant to the plaintiff the same as that for determining the applicable law for the definition of conversion.

*Restatement (Second)* § 147 governs the choice of law with respect to the tort of conversion and employs the law of the state where the injury (conversion) occurred, unless another state has a more significant relationship to the occurrence, the thing, and the parties. It cannot be doubted that the law of Nebraska should apply to the transaction here. The sale supposedly constituting the conversion took place in Nebraska; the defendant is a Nebraska domiciliary, while the plaintiff is an Iowa domiciliary; and the cattle were shipped from Iowa to Nebraska for the sale.

*Restatement (Second)* § 147 references § 6 as a guide in determining the significance of various relationships. I believe that three of the factors in § 6(2) are particularly helpful in this case. Sections 6(2)(b) and (c) incorporate a balancing of the relative policies of the states whose law is arguably relevant. In this case the policy of Nebraska is to require the holder of a security interest to protect his interest in cattle before they are sold by an auctioneer. The auctioneer is given protection from conversion suits under Neb.Rev.Stat. § 69–109.01 (Reissue 1981). Such a policy makes the domicile of the auctioneer and the place of sale particularly significant. The auctioneer no doubt will premise his insurance coverage and other precautionary measures on the law in the place where he lives and sells—in this case, Nebraska. Assuming, as the plaintiff contends, that Iowa would hold an auctioneer liable in this situation, its policy appears to favor the holder of a security interest. The domicile of the secured party would be significant with such a policy, as would the place of sale and the domicile of the auctioneer. The auctioneer would find it necessary to take appropriate precautions if there were the risk of his being held liable for conversion. Iowa, however, has only one of the significant contacts, compared to two in

Nebraska. Such a weighing of contacts clearly favors application of Nebraska law.

Section 6(2)(d) attaches significance to particular relationships based on the protection of justified expectations. This subsection would strongly favor attaching added significance to the domicile of the auctioneer and the place of sale, as the auctioneer would justifiably expect that such laws apply and would be in a position to take precautions against the degree of risk in that particular locale; otherwise, an auctioneer might encounter varying exposure to liability based on which transaction among many is involved. Therefore, the justified expectations warrant application of the law of Nebraska.

The law of Nebraska in that regard is to relieve the auctioneer of liability for conversion whenever he sells personal property at auction in good faith and without notice of a security interest, provided the principal is disclosed and the auctioneer has no interest in the property except to act as an intermediary of the owner. See Neb. Rev.Stat. § 69–109.01 (Reissue 1981). The statute seems wholly applicable in this case. The principal—H & O Farms—was disclosed to the defendant at the time of the sale. It does not appear that the defendant had any notice of any claim by the plaintiff to the 145 head of cattle. The 145 cattle were commingled with several hundred more, giving rise to an inference that the defendant had no notice. As discussed above, under the UCC the plaintiff could have had no more interest in the cattle than a security interest. The plaintiff makes no allegations that the defendant had any interest in the cattle other than as an intermediary for H & O Farms. It appears, therefore, that liability is cut off through the application of Neb.Rev.Stat. § 69–109.-01.

It should also be noted that under the analysis used to determine where title rests as a result of the dishonor of the H & O Farms check, the plaintiff likely did not have title. The possession of some property interest is a sine qua non of any action for conversion. The facts clearly indicate

that the plaintiff did not have title under the conditional payment rules of the UCC. Furthermore, it is doubtful that he had a security interest in the cattle. The UCC analysis given above indicates that the plaintiff's rights in the cattle are non-existent and that he possesses only a right for breach of contract occasioned by the failure of conditional payment. That is not a property right giving rise to an action for conversion of the cattle.

This analysis means that the defendant is entitled to judgment as a matter of law under the undisputed facts. An order will be entered denying the plaintiff's motion for summary judgment and granting the defendant's motion for summary judgment.