EVELYN L. SKILES, APPELLEE, V. SECURITY STATE BANK, A
NEBRASKA BANKING CORPORATION, APPELLANT.
494 N.W.2d 355

Filed November 17, 1992.    No. A-90-553.

Susan C. Williams, of Murphy, Pederson & Waite, for appellant.

David B. Downing, of Downing & Alexander, and Jefferson Downing, of Bruckner, O'Gara, Keating, Sievers & Hendry, P.C., for appellee.

CONNOLLY, MILLER-LERMAN, and WRIGHT, Judges.

MILLER-LERMAN, Judge.

Evelyn L. Skiles, appellee, filed this action against Security State Bank, appellant, seeking recovery of the value of three certificates of deposit plus interest which the bank had applied

to the indebtedness of Bradley Skiles, son of Evelyn Skiles and her deceased husband, Orval Skiles. In her second amended petition, Evelyn Skiles asserted that the bank had negotiated the CD's without her knowledge or consent and that to her knowledge there had never been an agreement pledging the CD's as collateral for the debts of Bradley Skiles and his wife, Rita. Evelyn Skiles prayed for judgment against the bank in the amount of $32,500 plus interest and costs. The bank asserted that it was a holder of a negotiable instrument pursuant to article 3 of the Nebraska Uniform Commercial Code and that because it was in possession of the CD's which were endorsed on the back, it had a right to recover unless Evelyn Skiles established a defense. See Neb. U.C.C. § 3-307 (Reissue 1980). The case was tried to a jury, inter alia, on the issue of whether Evelyn and Orval Skiles had agreed to pledge the CD's as security for Bradley Skiles' debts. The jury returned a verdict in favor of Evelyn Skiles, and the bank perfected this appeal.

On appeal, the bank assigns numerous errors which challenge various substantive rulings of the trial court, including the overruling of the bank's objection to the court's jury instruction No. 3B regarding the applicable burden of proof, the sufficiency of the evidence to support the jury's verdict, and the court's award of prejudgment interest. The bank also challenges various trial rulings, including denial of the bank's motion in limine, denial of the bank's motion for directed verdict, overruling of the bank's objection to the testimony of Evelyn Skiles' expert, overruling of the bank's objection to certain testimony of the bank president, and denial of the bank's motion for new trial. For the reasons recited below, we affirm.

## FACTS

The record supports the following facts: In 1982 and 1983, Evelyn and Orval Skiles deposited a total of $32,500 in three CD's with Security State Bank. Stapled to each CD and executed contemporaneously therewith is an assignment authored by the bank and executed by the Skiles in favor of the bank. Each of the CD's and the assignments were signed by either Orval Skiles or both Orval and Evelyn Skiles.

The assignments read:

> For value received, the undersigned hereby pledge and assign to Security State Bank, Holbrook the attached Certificate of Deposit [CD number] dated [date] and in the principal amount of [CD amount].
>
> The Assignment is made to secure any and all indebtedness of undersigned to Bank, the full payment of which will render this Assignment void; but otherwise to be of full force and effect including the right to apply both the principal and interest evidenced by such Certificate to the indebtedness of undersigned.
>
> Dated this [date].
>
> [Signatures.]

Throughout the trial and on appeal Evelyn Skiles maintained that the language of the assignments limits the application of the CD's to "indebtedness of the undersigned." The undersigned on the assignments were Orval and Evelyn Skiles. It is undisputed that at no time were Orval and/or Evelyn Skiles indebted to the bank. At trial, Evelyn Skiles testified that she understood that her son, Bradley, would get an advantageous loan interest rate if she did business with the bank. She denied knowledge of any other relationship between her CD's and her son's banking transactions.

Throughout the relevant period, Bradley Skiles entered into a series of promissory notes with the bank. The bank advanced funds to Bradley Skiles pursuant to this series of promissory notes. Although the promissory notes referenced the CD's of Orval and Evelyn Skiles as security, none of Bradley Skiles' promissory notes were signed by either Orval or Evelyn Skiles. Additionally, apparently neither Orval nor Evelyn Skiles were present when Bradley Skiles' promissory notes were executed. Bradley Skiles eventually defaulted on these notes.

In June 1986, the bank applied two of Orval and Evelyn Skiles' CD's plus accrued interest to the debts of Bradley Skiles. In October 1986, the bank applied the last of Orval and Evelyn Skiles' CD's to Bradley Skiles' debts. Suit by Evelyn Skiles to recover the value of the CD's followed.

Relying on its interpretation of the applicability of various Nebraska Uniform Commercial Code provisions, the bank

filed a motion in limine requesting the trial court to order Evelyn Skiles to not refer to any alleged defense she might have as to the bank's status as a holder of the CD's. The bank also moved to dismiss. Both motions were overruled. The jury returned a verdict for Evelyn Skiles in the amount of $33,674.28. Both parties moved for a new trial. The motions were overruled. The bank subsequently perfected this appeal.

## JURY INSTRUCTION

The bank assigns as error the propriety of instruction No. 3B regarding the burden of proof. The Nebraska Supreme Court has consistently held that it is reversible error to give a jury instruction which places the burden of proof on the wrong party. *Hersch Buildings, Inc. v. Steinbrecher*, 198 Neb. 486, 253 N.W.2d 310 (1977). The court finds that this instruction was not error.

The challenged instruction reads as follows:

### B. BURDEN OF PROOF

In connection with the defendant's claim that the plaintiff and her husband pledged the certificates of deposit for the debt of Brad and Rita Skiles, the defendant has the burden of proving, by the greater weight of evidence, each and all of the following:

1. That the plaintiff and her husband entered into an agreement with the defendant.

2. That the agreement pledged the certificates of deposit for the payment of the debts of Brad and Rita Skiles to the defendant.

The bank argues that under applicable cases and the code, it did not have the burden of proving that Evelyn and Orval Skiles made an agreement with the bank by which they allegedly pledged their CD's as payment of Bradley Skiles' debts. In support of its position, the bank relies on § 3-307(2), which reads as follows: "When signatures are admitted or established, production of the instrument entitles a holder to recover on it unless the defendant establishes a defense."

The bank argues that because it was in possession of the endorsed CD's, it was a holder of an instrument under § 3-307(2), and that upon production of the CD's, it was

entitled to recover the funds unless Evelyn Skiles "establishe[d] a defense." This court does not agree.

Under the definition section of article 3 of the code, an "instrument" is defined as follows: "In this article unless the context otherwise requires . . . 'instrument' means a negotiable instrument." Neb. U.C.C. § 3-102(1)(e) (Reissue 1980). Since "instrument" as used in § 3-307 is limited to negotiable instruments, the burdens of pleading and proof found in § 3-307 are limited to litigation involving negotiable instruments unless the context otherwise requires. *Aetna Cas. & Surety Co. v. Nielsen*, 217 Neb. 297, 348 N.W.2d 851 (1984) (holding that § 3-307 is applicable only to negotiable instruments).

To be a negotiable instrument, a writing must have the following characteristics:

> (a) be signed by the maker or drawer; and
>
> (b) contain an unconditional promise or order to pay a sum certain in money and no other promise, order, obligation or power given by the maker or drawer except as authorized by this article; and
>
> (c) be payable on demand or at a definite time; and
>
> (d) be payable to order or to bearer.

Neb. U.C.C. § 3-104(1) (Reissue 1980). A certificate of deposit can be a negotiable instrument if it complies with the requirements of § 3-104. See § 3-104(2)(c).

Under Neb. U.C.C. § 3-119(1) (Reissue 1980), an instrument "may be modified or affected by any other written agreement executed as part of the same transaction. . . ." This is consistent with longstanding Nebraska case law holding that in the absence of a contrary intent,

> instruments executed at the same time, by the same parties, for the same purpose, and in the course of the same transaction are, in the eyes of the law, one instrument, and will be read and construed as if they were as much one in form as they are in substance.

*Nowak v. Burke Energy Corp.*, 227 Neb. 463, 468, 418 N.W.2d 236, 240 (1988).

Each CD in this case, with its attached assignment executed contemporaneously by the same parties, is one modified

instrument for purposes of article 3 of the code. The court finds that the CD's, as modified by the assignments, are not negotiable instruments. Among the characteristics of the CD's in this case which make them nonnegotiable is their lack of payment "to order or to bearer" as required by § 3-104(1)(d); their lack of payment at a "definite time" as required by Neb. U.C.C. § 3-109(2) (Reissue 1980); the inability to determine a "sum certain" without reference to outside sources, namely the indebtedness of the undersigned; and the conditional nature of the promise to pay, which is inconsistent with § 3-104(1)(b). See *S.I.D. No. 32 v. Continental Western Corp.*, 215 Neb. 843, 343 N.W.2d 314 (1983). See, also, *Republican Valley Bank v. Security State Bank*, 229 Neb. 339, 426 N.W.2d 529 (1988). Because of these defects, the CD's are not negotiable instruments for article 3 purposes, and the burden of proof outlined in § 3-307(2) is inapplicable to the litigated transaction. Thus, the court's refusal to charge the jury based on § 3-307(2) was not error. See *Aetna Cas. & Surety Co. v. Nielsen, supra*.

Although the bank admits that the CD's are not negotiable instruments, it contends that the only defect is that they are not payable to order or to bearer. In a further effort to have § 3-307(2) applied to this case, the bank argues that Neb. U.C.C. § 3-805 (Reissue 1980) permits application of article 3 to instruments which are not negotiable where the only defect as to negotiability is that they are not payable to order or to bearer. The bank's argument that § 3-805 causes the nonnegotiable instruments in this case to be covered by all of article 3, including presumably the pleading and proof burden contained in § 3-307(2), is without merit.

Section § 3-805 reads as follows: "This article applies to any instrument whose terms do not preclude transfer and which is otherwise negotiable within this article but which is not payable to order or to bearer, except that there can be no holder in due course of such an instrument." Section 3-805's exception to the general proposition that article 3 is applicable only to negotiable instruments is limited by its terms to instruments made nonnegotiable by virtue of their lack of payment to order or to bearer. In the instant case, in addition to the lack of a to

order or to bearer designation, there are several deficiencies of the CD's, as modified by the assignments, which cause them to become nonnegotiable. The exception provided by § 3-805 is limited to nonnegotiability caused by lack of order or bearer form and is recognized as a codification and restatement of the law of merchantability and should be narrowly construed. See § 3-805 cmt. See, also, *Ford v. Darwin*, 767 S.W.2d 851 (Tex. Civ. App. 1989); *Matter of Estate of Holloway*, 515 So. 2d 1217 (Miss. 1987). For these reasons, the court finds that the instruments in this case do not fall into the exception of § 3-805 and are not subject to article 3 and the pleading and proof requirements of § 3-307(2).

Although the commercial paper between the parties was not a negotiable instrument, it does amount to a contract between the parties. The plain language of the CD's and assignments reads that if Orval and Evelyn Skiles were indebted to the bank, the bank could apply the value of the CD's to the indebtedness of Orval and Evelyn Skiles. At trial, the bank claimed that notwithstanding the clear language of the assignments, Orval and Evelyn Skiles had agreed that the CD's could be applied to Bradley Skiles' debts. The court's burden of proof instruction placed the burden of proving the terms of the contract on the bank. Since the bank authored the documents and took a position inconsistent with the documents which it authored, the court's burden of proof instruction was consistent with contract principles and was proper under the facts of this case. See, *First Westside Bank v. Herzog*, 204 Neb. 356, 282 N.W.2d 38 (1979); *Custom Leasing, Inc. v. Carlson Stapler and Shippers Supply, Inc.*, 195 Neb. 292, 237 N.W.2d 645 (1976). The court's burden of proof instruction fairly submitted the case to the jury. See *Hersch Buildings, Inc. v. Steinbrecher*, 198 Neb. 486, 253 N.W.2d 310 (1977). The instructions taken as a whole did not mislead the jury and were not prejudicial error. See, *Beauford v. Father Flanagan's Boys' Home*, 241 Neb. 16, 486 N.W.2d 854 (1992); *Bishop v. Farm Bureau Life Ins. Co.*, 228 Neb. 74, 421 N.W.2d 423 (1988). The bank's assignment of error based on the jury charge is without merit.

## SUFFICIENCY OF EVIDENCE

The bank argues that the evidence supports the conclusion that the bank had a security interest in the CD's under article 9 of the code. The bank asserts that the CD's, the assignments, and Bradley Skiles' promissory notes referencing the CD's are all one instrument pursuant to article 9 and result in the CD's being pledged as collateral for Bradley Skiles' indebtedness. The bank argues that the jury verdict should be set aside because it is clearly erroneous and against the weight of the evidence.

On review, an appellate court will not disturb a jury verdict unless it is clearly wrong, and it is sufficient if there is any competent evidence presented to the jury upon which it could find for the successful party. *Commerce Sav. Scottsbluff v. F.H. Schafer Elev.*, 231 Neb. 288, 436 N.W.2d 151 (1989).

In contrast to article 3, the court notes that "instrument," as used in article 9, is not limited to negotiable instruments. The court observes that negotiable instruments have certain peculiarities, e.g., "holder in due course" properties, which are not characteristic of other commercial paper and that in the absence of fulfilling the characteristics of negotiable instruments as listed in § 3-104(1), documents "calling for the payment of money and others loosely called 'commercial paper' are not negotiable instruments and not subject to the rules of Article Three" but may still be subject to other articles of the code. 1 James J. White & Robert S. Summers, Uniform Commercial Code § 13-1 at 622 (3d ed. 1988).

Indeed, § 3-104(3) provides that "[a]s used in other articles of this act, and as the context may require, the terms 'draft', 'check', 'certificate of deposit' and 'note' may refer to instruments which are not negotiable within this article as well as to instruments which are so negotiable." It has been held that "[e]ven where the certificate is non-negotiable, it still may be an instrument for Article 9 purposes." *Smith v. Mark Twain Nat. Bank*, 805 F.2d 278, 285 (8th Cir. 1986). Thus, the bank's reliance on article 9 for the proposition that the Skiles' modified CD's are instruments, if supported by the facts, is not incompatible with article 9 of the code.

The bank argues that a "security agreement" as used in

article 9 is extremely broad, see Neb. U.C.C. § 9-105(1)(l) (Reissue 1980), and that proof of its existence, where the secured party possesses the alleged collateral, is not limited to documentary evidence. See Neb. U.C.C. § 9-203 (Reissue 1980).

The court agrees generally with the bank's argument as to the scope of relevant proofs. The court notes, however, that for a valid security agreement to exist, the intention of the parties to create a security agreement must be clear. *In Re Airwest International*, 70 B.R. 914 (Bankr. D. Haw. 1987). Thus, for a valid perfected security agreement to exist, two inquiries must be made. The court must first resolve as a question of law whether the language embodied in the writing objectively indicates that the parties "did in fact agree, that a security interest in *something* exists." (Emphasis in original.) 2 White & Summers, *supra*, § 24-4 at 307.

> "If the language crosses this objective threshold, that is, if the writing evidences a possible secured transaction and thus satisfies the statute of frauds requirement, then the factfinder must inquire whether the parties actually intended to create a security interest. Parol evidence is admissible to inform the latter, but not the former inquiry. . . ."

(Emphasis omitted.) *In Re Airwest Intern.*, 70 B.R. at 919.

In the instant case, the record supports the bank's conclusion that based on the written evidence, the parties may have provided for a security interest covering Evelyn and Orval Skiles' indebtedness, if any existed. However, the jury, as factfinder, did not conclude that Orval and Evelyn Skiles intended to create a security interest in the CD's as collateral for Bradley Skiles' indebtedness. Admitted evidence included the testimony of the bank's president, testimony of a loan officer, and the actual promissory notes of Bradley Skiles which specifically refer to the CD's. This evidence, if believed by the jury, supported the bank's position that a security agreement existed and that Evelyn and Orval Skiles' CD's were collateral for Bradley Skiles' debts. Contrary evidence was admitted, including the testimony of Evelyn Skiles and Bradley Skiles and the above-mentioned promissory notes which were signed on

dates different from the CD's and signed only by Bradley Skiles, which tended to defeat the bank's claim that the CD's were intended as collateral for Bradley Skiles' debts. It appears that the jury credited Evelyn Skiles' testimony that the CD's were not intended to secure Bradley Skiles' indebtedness.

As noted above, a jury verdict may not be set aside unless clearly wrong, and it is sufficient if there is any competent evidence presented to the jury upon which it could find for the successful party. *Commerce Sav. Scottsbluff v. F.H. Schafer Elev.*, 231 Neb. 288, 436 N.W.2d 151 (1989). For the reasons recited above, this court concludes that there was sufficient credible evidence to support the jury's verdict, and the bank's assignment of error related thereto is without merit.

### INTEREST ON PLAINTIFF'S AWARD

The bank asserts that the trial court erred in awarding prejudgment interest to appellee, since Evelyn Skiles' cause of action was in conversion and damages in a conversion action are based on the value of the property at the time of the conversion. See *Chadron Energy Corp. v. First Nat. Bank*, 221 Neb. 590, 379 N.W.2d 742 (1986). In reviewing Evelyn Skiles' second amended petition, the court notes that she asserts that the bank issued CD's for value received and later applied the proceeds of the CD's to Bradley Skiles' debts. The second amended petition alleges in paragraph 6 that at no time did Evelyn Skiles or her husband "ever pledge these certificates of deposit as collateral for the debt of Brad and Rita Skiles, nor did they, or either of them, ever at any time sign anything which would accomplish that result." She then prays for judgment in the amount of the CD's plus interest. This court observes that Evelyn Skiles' petition sounds in contract. Additionally, the bank's entire defense is based on the existence of a contract pledging the CD's to secure Bradley Skiles' debts. The jury found that the evidence did not support the bank's assertion that the parties agreed that the CD's would serve as security for Bradley Skiles' debts.

Under certain circumstances prejudgment interest is allowed. In the instant case, the instrument sued on is an interest-bearing document. Because the parties have entered

into an interest-bearing agreement, the award for a successful suit based on that agreement is the face amount of the instrument plus interest thereon as agreed to. *First Nat. Bank v. Bolzer*, 221 Neb. 415, 377 N.W.2d 533 (1985). The court is aware of the passage of 1986 Neb. Laws, L.B. 298, § 3 (Neb. Rev. Stat. § 45-103.02 (Reissue 1988)) since the decision in *Bolzer*. No case could be found, however, which directly overrules the holding in *Bolzer*. Cf. *Knox v. Cook*, 233 Neb. 387, 446 N.W.2d 1 (1989). When the trial court was presented with a motion to include interest, it was proper for it to have awarded the amount of interest, as agreed to by the parties on the face of the CD's. See *Bolzer, supra*. The trial court's order assessing interest against the bank to the judgment date "under the terms of [the three] Certificates of Deposit" was not error and is affirmed.

## OTHER ASSIGNMENTS OF ERROR

With respect to appellant's various assignments of error regarding trial rulings, this court has reviewed the record and finds that none are meritorious. The bank's reliance on cases in which party defendants failed to file affirmative defenses to actions based on negotiable instruments are inapposite because, for reasons recited at length above, the CD's in this case are not negotiable instruments and this action is not subject to the pleading and proof requirements of § 3-307(2). Cf. *Commodity Traders v. Finn, ante* p. 39, 487 N.W.2d 297 (1992) (holding that the check at issue was a negotiable instrument subject to § 3-307(2)). Accordingly, the court notes that the trial court's denial of the bank's motion in limine seeking to limit testimony amounting to a defense by Evelyn Skiles was not error, in that her second amended petition and reply to the bank's "alternative defense" were subject to ordinary pleading requirements and taken together adequately pled what amounted to a denial of the bank's amended answer. See Neb. Rev. Stat. § 25-821 (Reissue 1989). Evelyn Skiles' pleadings gave adequate notice of her denial of the bank's allegation that the CD's were pledged to secure Bradley Skiles' debts. See *Ruwe v. Farmers Mut. United Ins. Co.*, 238 Neb. 67, 469 N.W.2d 129 (1991).

The trial court's denials of the bank's motion for directed verdict and motion for new trial based on an alleged failure to plead an "affirmative defense" in the reply were not error. A trial court should direct a verdict as a matter of law only when the facts are conceded, undisputed, or such that reasonable minds can draw but one conclusion therefrom. The party against whom a verdict is directed is entitled to have every controverted fact resolved in his or her favor and to have the benefit of every inference which can reasonably be drawn from the evidence. If there is any evidence which will sustain a finding for the party against whom the judgment is made, the case may not be decided as a matter of law. *Baker v. St. Paul Fire & Marine Ins. Co.*, 240 Neb. 14, 480 N.W.2d 192 (1992); *Leonard v. Wilson*, 238 Neb. 1, 468 N.W.2d 604 (1991); *Carnes v. Weesner*, 229 Neb. 641, 428 N.W.2d 493 (1988). Based on a review of the record, the trial court's denial of the bank's motion for a directed verdict was not error. The standard of review of an order granting a new trial is whether the trial court abused its discretion. A motion for new trial should be granted only where there is error prejudicial to the rights of the unsuccessful party. Unless such error appears, a party who has sustained the burden and expense of trial, and who has succeeded in securing a verdict on the facts in issue, has a right to keep the benefit of that verdict. *Kumar v. Douglas County*, 234 Neb. 511, 452 N.W.2d 21 (1990); *Lemke v. Northwestern Public Serv. Co.*, 233 Neb. 223, 444 N.W.2d 326 (1989); *Commerce Sav. Scottsbluff v. F.H. Schafer Elev.*, 231 Neb. 288, 436 N.W.2d 151 (1989). Based on a review of the record, the denial of the bank's motion for a new trial was not an abuse of discretion and was not error.

With respect to the bank's assignment of error claiming that Evelyn Skiles' expert witness, Dan Fisher, a Grand Island banker, should not have been permitted to testify as to the proper documentation necessary to create a security agreement, the court finds that he was properly qualified as a banking expert and that the court properly charged the jury with respect to the significance and weight to be accorded Fisher's testimony. Whether a witness is qualified to testify as an expert under the Nebraska Evidence Rules is preliminarily a question of

admissibility for a trial court under Neb. Evid. R. 104(1), Neb. Rev. Stat § 27-104(1) (Reissue 1989). See, also, Neb. Evid. R. 702, Neb. Rev. Stat. § 27-702 (Reissue 1989). Such a determination will be upheld on appeal unless the trial court's finding is clearly erroneous. *In re Interest of C.W. et al.*, 239 Neb. 817, 479 N.W.2d 105 (1992). See, also, *State v. Stahl*, 240 Neb. 501, 482 N.W.2d 829 (1992). Based on the record, Fisher's testimony was admissible, and the admission of his testimony was not an abuse of discretion.

The bank next assigns as error the introduction, over objection, of the testimony and accompanying exhibit of Charles R. Leffler, Jr., the bank's president, regarding the proper form of an assignment to effect a security agreement. The court finds that this evidence was both relevant and introduced by a competent witness and was merely cumulative to Leffler's testimony as to how an assignment might be better drafted. See *Rocek v. Department of Public Institutions*, 225 Neb. 247, 404 N.W.2d 414 (1987). Its admission was not error.

For the reasons recited above, this court concludes that the court's rulings were not error and the jury verdict was adequately supported by the admissible evidence. The judgment of the trial court is affirmed.

AFFIRMED.