**In the Matter of Jerry Allen TRAUDT and Marcia Ann Traudt, Debtors.**

**Bankruptcy No. BK90–41677.**

United States Bankruptcy Court, D. Nebraska.

Oct. 5, 1993.

Earl Ahlschwede, Grand Island, NE, for Robotham Dairy, Ltd.

Rick D. Lange, Lincoln, NE, for Farmers State Bank & Trust Co.

Steven M. Curry, Central City, NE, for debtors.

John A. Wolf, Grand Island, NE, Chapter 7 Trustee.

## MEMORANDUM

JOHN C. MINAHAN, Jr., Bankruptcy Judge.

Before the court is the Motion For Distribution Of Sale Proceeds (Fil. # 160) by Farm Credit Bank & Trust Company, Aurora, Nebraska (hereinafter the "Bank"), and Robotham Dairy's Resistance thereto (Fil. # 166). Both the Bank and Robotham Dairy claim an interest in certain cows of the debtors that were sold at an auction on March 3, 1993. I

conclude that the Bank's Motion For Distribution of Proceeds (Fil. # 160) should be denied because Robotham Dairy may hold a valid priority purchase money security interest in a portion of the cattle that were sold. A trial will be necessary in order to determine whether any of the sold cattle were subject to the purchase money security interest of Robotham Dairy.

The sole issue before the court at this time is whether Robotham Dairy was in fact granted or retained a security interest in 80 head of cattle which Robotham Dairy sold to the debtors in 1988. There is no dispute as to material facts on this narrow question. The parties entered into a Stipulation of Facts, which is incorporated herein. (See Fil. # 182).

The debtors filed Chapter 12 bankruptcy on December 20, 1990. The Bank holds a perfected security interest in all the debtors' farm products, including their livestock, pursuant to a security agreement executed on October 16, 1987. On March 3, 1993, the debtors' dairy cattle were sold by auction, and the proceeds were deposited with the Clerk of the Bankruptcy Court. The Bank filed a Motion For Distribution of Proceeds (Fil. # 160) on April 2, 1993, asserting it was entitled to the proceeds of the sale by virtue of its perfected security interest. Robotham Dairy filed a Resistance To Motion For Distribution of Proceeds (Fil. # 166) asserting that it holds a priority purchase money security interest in cattle sold, and that it is entitled to a portion of the proceeds.

Robotham Dairy entered into an installment sales contract with the debtors on September 21, 1988. (Exhibit P to the Stipulation, Fil. # 182). Under the contract debtors purchased real estate, personal property, and 80 head of cattle from Robotham Dairy. Robotham Dairy filed a financing statement on September 23, 1988, covering the 80 head of cattle. (See Exhibit R of the Stipulation, Fil. # 182). However, Robotham Dairy did not obtain a separate formal "security agreement" by which debtors granted to Robotham Dairy a security interest in the 80 head of cattle. Robotham Dairy asserts that the installment sales contract, when read together with the financing statement, constitutes

the requisite security agreement for its purchase money security interest in the 80 head of cattle.

■ Section 9–203 of the Nebraska Uniform Commercial Code ("UCC") provides that for a security interest to be enforceable 1) the collateral must be in the possession of the secured party, or the there must be written security agreement signed by the debtor; 2) the creditor must have given value; and 3) the debtor must have rights in the collateral. See Nebraska UCC § 9–203(1) (Reissue 1992). The last two requirements are met in the present case and are not in dispute. Robotham Dairy did not remain in possession of the cattle. The court must determine whether Robotham Dairy has satisfied the statutory requirement of UCC § 9–203(1) for a "written agreement signed by the debtor" covering the 80 head of cattle.

■ A separate formal security agreement is not required by UCC § 9–203. See *In re Numeric*, 485 F.2d 1328, 1331 (1st Cir.1973). A financing statement by itself is usually not considered a "security agreement", because such statements usually do not contain language by which the debtor grants or transfers an interest to the secured party. However, a financing statement describing the collateral may provide the necessary security agreement when considered together with other documents. *Id.* at 1332; *Shelton v. Erwin*, 472 F.2d 1118, 1120 (8th Cir.1973). In the present case there is a financing statement which adequately describes the collateral, and an installment sales contract. The court must determine if these documents, taken together, satisfy the requirement for a written security agreement signed by the debtor.

■ Section 9–105(1)(*l*) of the UCC defines "security agreement" as "an agreement which creates or provides for a security interest." Nebraska UCC § 9–105(1)(*l*) (Reissue 1992). "Agreement" is defined in the UCC as "the bargain of the parties in fact as found in their language or by implication from other circumstances...." See Nebraska UCC § 1–201(3) (Reissue 1992). Finally, "security interest" is defined by the UCC to mean "an interest in personal property or

fixtures" securing payment or performance, and includes the reservation or retention of title by a seller. See Nebraska UCC §§ 1–201(37), 2–401 (Reissue 1992); *Myers v. Columbus Sales Pavilion,* 575 F.Supp. 805, 807 (D.Neb.1983).

I conclude that under the installment sales contract Robotham Dairy retained title to the cattle pursuant to § 2–104 of the UCC. The description of property sold in the installment sales contract (Exhibit P of the Stipulation, Fil. # 182), includes the sale of real estate, personal property, and 80 head of cattle. Under the contract, the documents of conveyance, including a warranty deed, deeds, and bills of sale, are held by an escrow agent until the purchase price is paid by the debtors, at which time these documents are to be delivered to the debtors. (Exhibit P, Page 2, Fil. # 182). Robotham Dairy retains title to the items sold until the last installment is paid. Thus under UCC § 2–104, Robotham Dairy retained a security interest in the 80 head of cattle as a matter of law. The retention of title and the written installment sale contract satisfy the requirement of § 9–203(1) for a written security agreement signed by the debtors.

 Under Nebraska law, the parties must intend to create a security agreement for the security agreement to be valid. See *Skiles v. Security State Bank,* 494 N.W.2d 355, 361 (Ct.App.Neb.1992) (citing *In re Airwest International,* 70 B.R. 914 (Bankr. D.Haw.1987)). This requires two inquiries: 1) whether a signed writing indicates the parties agreed that a security interest exists, thus satisfying the Statute of Frauds requirement, and 2) whether the parties intended to create a security interest. *Skiles,* 494 N.W.2d at 361. I conclude that the parties to the contract clearly intended that Robotham Dairy retain an interest in the 80 head of cattle to secure payment, and that the Statute of Frauds requirement is met.

██ The installment sales contract, considered in conjunction with the financing statement, meets the Statute of Frauds requirement of a signed writing evidencing the parties agreed that a security interest exists. As stated before, the parties to the contract agreed that the seller retained title to the items sold until the purchase price was paid, and the documents of conveyance were to remain in escrow until that time. The debtors signed both the contract and the financing statement. The financing statement adequately describes the collateral and specifically references the installment sales contract. Furthermore, the installment sales contract states that "[b]uyer further agrees to give the Seller ... a secured interest under the Uniform Commercial Code in the above 80 head of dairy cattle...." (See Exhibit ·P, Page 5, Fil. # 182). Thus it is clear that the parties agreed and recognized that Robotham Dairy retained a security interest. The contract does go on to state that the "[b]uyer will execute the necessary security agreement and financing statement to adequately grant the Seller a secured interest ...". (Exhibit P, Page 6, Fil. # 182). The execution and filing of a financing statement was necessary to perfect the interest. A financing statement was duly executed and filed. It was not necessary for the parties to complete a formal separate security agreement because that requirement is satisfied by the financing statement and installment sale contract.

The parties intended to create a security interest. Reading the contract in its entirety, along with the financing statement, I conclude that these documents clearly show an intent to "provide for" a security interest, and therefore meet the definition of a "security agreement" under UCC § 9–203. The provisions of the contract show the parties' intent that to secure payment the seller retained an interest in the cattle at the time the contract was executed. The continuing interest of the seller Robotham Dairy was recognized throughout the installment sales contract. The installment sales contract required the debtors to maintain insurance on the cattle with Robotham Dairy named as the loss-payee on these policies. (Exhibit P, Page 4, Fil. # 182). The debtors agreed to operate the premises in a "husband-like" manner, and prevent a "lessening of the security". (Exhibit P, Page 4, Fil. # 182). These provisions evidence that both debtors and Robotham Dairy understood that Robot-

ham Dairy had a continuing interest in the cattle to secure payment.

In summary, I conclude that the installment sales contract provided Robotham Dairy with a security interest in the cattle. The language in the contract evidences that the parties agreed to and intended this result. The financing statement and installment sales contract, considered together, adequately describe the collateral and form the requisite written security agreement. Robotham Dairy possesses a valid purchase money security interest in the 80 head of cattle covered by the contract, which was perfected in accordance with Nebraska law by filing the financing statement within 20 days of the time debtors took possession of the cattle.

IT IS THEREFORE ORDERED, that the Motion For Distribution of Proceeds by Farm Credit Bank and Trust Company, Aurora, Nebraska (Fil. # 160) is denied.

IT IS FURTHER ORDERED, that the clerk shall schedule a trial in this case to determine whether any proceeds of the auction are subject to the security interest of Robotham Dairy.